**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 1:21-cv-00236-MR-WCM**

| | | |
|---|---|---|
| **AFARRAH CHARDAE SANDERS,** | ) | |
| **as the Administrator of the Estate** | ) | |
| **of Jackie Israel Sanders,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **RYAN BAILEY, in his individual** | ) | |
| **capacity; CODY MCINTYRE; in his** | ) | |
| **individual capacity; DEREK DEATON,** | ) | |
| **in his individual capacity; HUNTER** | ) | |
| **HAYNES, in his individual capacity;** | ) | |
| **JEFF SMITH, in his individual** | ) | |
| **capacity; JOSHUA KUJAWA, in his** | ) | |
| **individual capacity; MATTHEW** | ) | |
| **OWENS, in his individual capacity;** | ) | |
| **WILMER CHAVEZ-PEREZ, in his** | ) | |
| **individual capacity; CRAIG KELLER,** | ) | |
| **in his individual capacity and in his** | ) | |
| **official capacity; ELIZABETH** | ) | |
| **SPROUSE, in her individual capacity;** | ) | |
| **JOHN COOLEY, in his individual** | ) | |
| **capacity; JOSHUA GOODWIN,** | ) | |
| **in his individual capacity; CHRIS** | ) | |
| **FRANCIS, The Sheriff of Rutherford** | ) | |
| **County, in his Official Capacity; and** | ) | |
| **TIM WRIGHT, The Sheriff of Polk** | ) | |
| **County, in his official capacity,** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Approval

of Settlement and Order Authorizing Distributions to Minor Beneficiaries of

the Estate of Jackie Israel Sanders [Doc. 29] and the Plaintiff's Petition to Approve Administrator's Commission [Doc. 31].

## BACKGROUND

This is a wrongful death action brought by the Plaintiff Afarrah Sanders, as the Administrator of the Estate of Jackie Israel Sanders ("Mr. Sanders"). On January 24, 2020, Mr. Sanders was stopped by the Defendants in Rutherford County for a tag violation while the Defendants were conducting a multi-agency criminal interdiction operation. Mr. Sanders ran from the officers at the scene of the stop, but he was taken into custody shortly after the foot chase. Mr. Sanders died while in custody after suffering a cardiac arrhythmia and cardiac arrest. The Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 arising from the Defendants' alleged deliberate indifference to Mr. Sanders' obvious medical needs and failure to provide emergency medical treatment and/or transportation to the hospital for treatment, in violation of his constitutional rights.

After filing suit, the parties engaged in substantial written discovery, the depositions of all parties and some lay witnesses, and a mediated settlement conference that was conducted on October 12, 2022. Although no agreement was reached at that time, the mediator did not declare an impasse, and the parties continued negotiations until November 8, 2022,

when the parties reached an agreement to settle all claims asserted herein. The Plaintiff now seeks court approval of that settlement, as all three beneficiaries of the settlement are J.S., M.S., and C.S., the minor children of Jackie Israel Sanders.[1] <u>See</u> N.C. Gen. Stat. § 28A-13-3(23). [Doc. 29]. The Plaintiff also seeks approval of a commission to be paid to the Plaintiff from the settlement funds for her services as the administrator of Mr. Sanders' estate. [Doc. 31].

The Court held a hearing on these motions on January 20, 2023. Present at the hearing were: Brian A. Buchanan and Jake Erwin, counsel for the Plaintiff; Sean Perrin, counsel for the Defendants; the Plaintiff Afarrah Sanders, the duly appointed Administrator of the Estate of Jackie Israel Sanders; attorney Stephen Agan, the Guardian ad Litem for minor beneficiaries J.S. and M.S.; attorney Brian Davis, the Guardian ad Litem for beneficiary C.S.; Frances Smith, the mother and natural guardian of the minor beneficiaries J.S. and M.S.; and Chelsea Martin, the mother and natural guardian of the minor beneficiary C.S. Prior to the hearing, the Court reviewed all of the pleadings in this case, including the following documents filed in support of the Plaintiff's Motion for Approval of Settlement and Petition

---

[1] The full names and dates of birth of these minor children are set forth in a sealed addendum to this Order.

3

to Approve Administrator's Commission: (1) the Settlement and Release of All Claims [Doc. 29 at 7]; (2) the Plaintiff's Representation Agreement with counsel [id. at 13]; (3) the Affidavit of Brian A. Buchanan Regarding Attorney Fees [id. at 15]; (4) the Affidavit of Jake Erwin Regarding Attorney Fees [id. at 17; the funeral expenses incurred by the Estate [id. at 19]; documents related to the Structured Settlement Proposals for M.S. and C.S., including the terms and conditions of the annuity payments, and the establishment of a special needs trust for C.S.; and a proposed disbursement sheet.[2]  At the hearing, the parties submitted an amended Settlement and Release of All Claims ("Settlement and Release Agreement") signed by all parties.  [Doc. 32].   After a careful review of these documents, and based on the representations of the parties at the hearing, the Court makes the following findings of fact:

## <u>FINDINGS OF FACT</u>

1.     To assess the reasonableness of the Settlement and Release Agreement, the Court requested that counsel for the Plaintiff and the Defendants give a forecast of their trial evidence and provide a candid evaluation of the strengths and weaknesses of the Plaintiff's claims and any

---

[2] The structured settlement documents, trust documents, and disbursement sheet were not filed with the motion but rather were submitted directly to chambers prior to the hearing.  These documents are attached as sealed addenda to this Order.

4

defenses thereto. The parties complied with the Court's request and proffered the following details surrounding the factual and legal circumstances of this matter.

2. The Plaintiff's claims arise from the Defendants' alleged failure to provide Mr. Sanders with any medical care when he showed classic symptoms of heart or respiratory distress, including shortness of breath, dizziness, fainting, inability to walk, confusion, inability to talk, inability to hold his head upright, and other serious symptoms. Mr. Sanders began exhibiting these symptoms at the scene of the arrest; by the time he arrived at the detention facility, he was unconscious. Despite Mr. Sanders' condition, the Defendants did not immediately call for emergency medical services. Although emergency services were eventually called, EMTs were unable to resuscitate Mr. Sanders, and he was pronounced dead at the scene. An autopsy determined that Mr. Sanders died from dilated cardiomyopathy, a type of heart failure.

3. The Plaintiff designated experts who were expected to testify that Mr. Sanders was having a medical emergency that would have been obvious to a lay person or a law enforcement officer, and that the officers should have called for emergency medical assistance earlier than they did. The Plaintiff's

medical expert would have testified that Mr. Sanders could have been saved by prompt medical attention.

4.     The Defendants designated experts who were expected to testify that Mr. Sanders' condition was not obvious to a lay person such as a law enforcement officer, and that his heart condition was previously unknown even to Mr. Sanders. These experts would have testified that the actions of the Defendants were within police standards. The Defendants' medical experts were also expected to testify that even if EMS had been called sooner, Mr. Sanders was suffering from a fatal arrhythmia and would likely not have survived regardless of treatment.

5.     Candidly assessing the case, the Plaintiff's counsel was concerned that Mr. Sanders' cardiac arrest was likely precipitated by his running from the officers at the initial traffic stop; that Mr. Sanders was only in the presence and custody of the "arresting officers," with the exception of Officer Keller, for approximately 15 minutes total; and that Mr. Sanders was only in the presence of the "detention officers" for 7 minutes before they called 911 for EMS.  Among other defenses, the Defendants asserted the defense of qualified immunity, and while Plaintiff's counsel did not expect all the Defendants to prevail on the defense of qualified immunity, some probably would have, and immediate appeals would have prolonged the

litigation substantially. Further, the Defendants' insurance carrier took the position that the applicable insurance policy would not have covered compensatory damages awarded for any intentional acts of the Defendants, nor would it have covered an award of punitive damages. The Plaintiff's counsel was aware that, in order to demonstrate "deliberate indifference" to Mr. Sanders' medical needs, the Plaintiff would necessarily have to prove "intentional" or "deliberate" conduct that would have likely negated any insurance coverage.

6.    The Plaintiff's counsel explained to the Plaintiff that the certainty of a negotiated settlement had significant value to the beneficiaries because continued litigation could result in outright dismissal of some or all the Plaintiff's claims, prolonged appellate litigation, trial with results less favorable than the negotiated agreement, or trial with more favorable results but possibly no insurance coverage from which to recover the verdict.

7.    After weighing all of these factors, the Plaintiff determined that the settlement was fair and in the best interests of the minor beneficiaries.

8.    Counsel Jake Erwin was retained by the Plaintiff pursuant to a contingent fee agreement, pursuant to which the Plaintiff agreed to pay counsel 45% of any recovery if the case was resolved after the filing of a lawsuit.

7

9.     Counsel Jake Erwin associated counsel Brian A. Buchanan of Grimes Teich Anderson, LLP, as co-counsel and local counsel to proceed with this action in the Western District of North Carolina.

10.     Mr. Erwin and Mr. Buchanan advanced costs and expenses in furtherance of this case.  The amounts of those expenses are reflected in the Disbursement Sheet, attached as a sealed addendum to this Order. Neither defense counsel nor the Guardians ad Litem object to these expenses.

11.     Both Mr. Erwin and Mr. Buchanan have submitted affidavits explaining the time expended by each of them in this case through the date of settlement.  Both attorneys have spent additional time pursuing this case since the date of the settlement, including consultations with the parties, the Guardians ad Litem, and structured settlement advisers.

12.     The share of the settlement proceeds to be awarded to J.S. are to be held in the attorney trust account of Grimes Teich Anderson, LLP, and disbursed to J.S. on or after her 18th birthday.

13.     The Plaintiff has submitted a structured settlement proposal for the share of the settlement proceeds to be awarded to M.S. in which his share of the settlement proceeds shall be used to fund an annuity which will pay to M.S. a set amount annually starting on his 18th birthday and each year

8

after that until his 21st birthday. The structured settlement annuity agreement and its terms are attached to this Order as a sealed addendum.

14. The Plaintiff has submitted a structured settlement proposal for the share of the settlement proceeds to be awarded to C.S. in which a portion of his share of the settlement proceeds shall be used to fund a Minor's Trust to provide for C.S.'s needs until he is no longer a minor. Further, the remainder of C.S.'s share shall be used to fund an annuity which will pay to C.S. a set amount annually starting on his 18th birthday and each year after that until his 21st birthday. A copy of the Minor's Trust and the structured settlement annuity agreement and their terms are attached to this Order as a sealed addendum.

15. At the hearing held on January 20, 2023, the Plaintiff acknowledged that she:

      a.   Has read the Settlement and Release Agreement filed in this matter, and that she understands and agrees to the terms of that agreement.

      b.   Has had adequate opportunity to confer with her counsel regarding her decision to settle this matter.

      c.   Understands that the Settlement and Release Agreement proposes that certain consideration be paid for the benefit

of the minor children of the decedent, Jackie Israel Sanders.

d. Believes that, in her capacity as the Administrator of the Estate of Jackie Israel Sanders, the proposed settlement is fair and reasonable for the minor children under the circumstances of this case, particularly as to the nature of the settlement, the amount of monetary payments to be made under the settlement, and the proposed disbursements of the settlement funds.

e. Understands that, if the Court approves the Settlement and Release Agreement, the consideration due will be paid as described in the settlement agreement.

f. Understands that if the Court approves the settlement agreement, the provision of the consideration for the settlement by the Defendants will terminate the estate's claims and any claims of the minor children against the Defendants.

g. Understands that her decision to accept the settlement agreement on behalf of the estate and the minor children, if approved by the Court, will bind the estate and the minor

10

children and the minor children will be enjoined from seeking any future claims or redress against the Defendants based upon the acts and omissions alleged in this case.

16.     At the hearing on January 20, 2023, Frances Smith, as the mother and natural guardian of J.S. and M.S., stated that she:

    a.    Has spoken with counsel and understands the strengths and weaknesses of the case.

    b.    Believes the gross settlement amount and the net amount to be paid to each of her minor children is fair and reasonable.

    c.    Believes the proposed attorney fee award to be fair and reasonable.

    d.    Believes the settlement as a whole is fair and reasonable and in the best interest of her minor children.

    e.    Has discussed with counsel and the Guardian ad Litem for J.S. and M.S. the provisions that have been made for the management of the settlement funds paid for the benefit of her minor children, and she understands those provisions.

11

f. Has reviewed the documents related to the management of those funds for M.S. and finds those terms to be satisfactory.

g. Understands that since J.S. will turn eighteen (18) shortly after this hearing, J.S. will receive all of her share of the settlement in one lump sum from the attorney trust account of Grimes Teich Anderson, LLP, on or shortly after her 18th birthday.

h. Understands that the settlement funds may not be used for typical parental expenditures or to discharge any legal obligation that she has as the parent of the minor children.

i. Understands that, if the Court approves the Settlement and Release Agreement, the provision of the consideration for the settlement by the Defendants will terminate any claims of the minor children against the Defendants. She further acknowledged that she understands that her decision to accept the Settlement and Release Agreement on behalf of the minor children (if such agreement is approved by the Court) will bind the minor children and said children will be enjoined from seeking any future redress against the

12

Defendants, pursuant to the Settlement and Release Agreement, based upon the acts and omissions alleged in the Complaint.

17.     At the hearing on January 20, 2023, Chelsea Martin, as the mother and natural guardian of C.S., acknowledged that she:

a.     Has spoken with counsel and understands the strengths and weaknesses of the case.

b.     Believes the gross settlement amount and the net amount to be paid to her minor child is fair and reasonable.

c.     Believes the proposed attorney fee award to be fair and reasonable.

d.     Believes the settlement as a whole is fair and reasonable and in the best interest of her minor child.

e.     Has discussed with counsel and the Guardian ad Litem for C.S. the provisions that have been made for the management of the settlement funds paid for the benefit of her minor child, and she understands those provisions.

f.     Has reviewed the documents related to the management of those funds for C.S. and finds those terms to be satisfactory.

13

g.     Understands that the settlement funds may not be used for typical parental expenditures or to discharge any legal obligation that she has as the parent of the minor child.

h.     Understands that, if the Court approves the Settlement and Release Agreement, the provision of the consideration for the settlement by the Defendants will terminate any claims of the minor child against the Defendants. She further acknowledged that she understands that her decision to accept the Settlement and Release Agreement on behalf of the minor child (if such agreement is approved by the Court) will bind the minor child and said child will be enjoined from seeking any future redress against the Defendants, pursuant to the Settlement and Release Agreement, based upon the acts and omissions alleged in the Complaint.

18.    At the hearing on January 20, 2023, Attorney Stephen Agan, as Guardian ad Litem for J.S. and M.S., acknowledged that he:

a.     Has read the Settlement Agreement and Release.

b.     Has reviewed the pleadings as well as the body worn camera videos and detention center videos, and has

14

spoken with counsel and understands the strengths and weaknesses of the case.

c.    Is satisfied that, in his capacity as Guardian ad Litem for J.S. and M.S., the proposed settlement is fair and reasonable for the minor children under the circumstances of this case, particularly as to the nature of the settlement, the amount of the monetary payments under the settlement, and the proposed disbursements of the settlement funds.

19.    At the hearing on January 20, 2023, Attorney Brian Davis, as Guardian ad Litem for C.S., acknowledged that he:

a.    Has read the Settlement Agreement and Release.

b.    Has reviewed the pleadings as well as the body worn camera videos and detention center videos and has spoken with counsel and understands the strengths and weaknesses of the case.

c.    Is satisfied that, in his capacity as Guardian ad Litem for C.S., the proposed settlement is fair and reasonable for the minor child under the circumstances of this case, particularly as to the nature of the settlement, the amount

15

of the monetary payments under the settlement, and the proposed disbursements of the settlement funds.

20.    The Court finds that the attorney's fees and costs of litigation as requested by the Plaintiff's counsel are fair and reasonable upon considering the factors outlined by In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010), including the skill of the work performed and the degree of success obtained for the minor children.  Specifically, the Court finds that this litigation, which involved issues of medical causation, federal civil rights liability, and governmental immunity, required a high degree of specialized skill and knowledge on the part of counsel.  While the case was settled relatively early in the stages of litigation, counsel was required to perform a considerable amount of work conducting discovery and procuring the testimony of expert witnesses to support the Plaintiff's claims.  This also resulted in a large amount of costs being advanced by the Plaintiff's counsel, with the potential that such expenses might not be recouped in the event that the case was dismissed or otherwise decided in the Defendants' favor. Additionally, by settling this matter before the summary judgment stage, counsel did not incur additional costs in briefing such motions and preparing the matter for trial.

21. The Plaintiff Afarrah Sanders, as the Administrator of the Estate of Jackie Israel Sanders, has submitted a Petition to Approve an Administrator's commission pursuant to NCGS § 28A-23-3(a). [See Doc. 31].

22. Neither counsel for the Defendants nor the Guardians ad Litem object to the Plaintiff's Petition.

23. The Plaintiff has expended substantial time in reaching the settlement as well as the additional time to participate in this hearing. The Plaintiff has missed work for attorney conferences, depositions, and the mediated settlement conference. There are no assets of the estate from which a commission could be awarded to the Plaintiff. The Court finds that a commission of 2% of the settlement amount is an appropriate commission in this case.

## **CONCLUSIONS OF LAW**

**WHEREFORE**, based upon the foregoing Findings of Fact, the Court concludes as a matter of law that:

1. Minors, because they are legally incompetent to transact business or give consent for most purposes, need responsible, accountable adults to handle property or benefits to which they are or become entitled. N.C. Gen. Stat. § 35A-1201(a)(6). Additionally, where minors are entitled to

17

receive damages pursuant to the settlement of a wrongful death action, the settlement must be approved by the Court, even though the minor beneficiaries are not parties to the wrongful death action. N.C. Gen. Stat. § 28A-13-3(23).

2.     The Plaintiff Afarrah Sanders, acting in her capacity as the Administrator of the Estate of Jackie Sanders, is competent in all respects and understands the ramifications of the Settlement and Release Agreement, as well as the effect of the agreement on the minor children, and she is competent to execute the Settlement and Release Agreement and to execute her duties accordingly.

3.     Frances Smith, as the mother and natural guardian of the minor beneficiaries J.S. and M.S., is competent in all respects and able to understand the ramifications of the Settlement and Release Agreement, as well as the disbursement for J.S. upon her 18th birthday, and the structured settlement annuity being purchased for M.S.

4.     The Plaintiff Afarrah Sanders, acting in her capacity as the Administrator of the Estate of Jackie Sanders, and Frances Smith, as the mother and natural guardian of the minor beneficiaries J.S. and M.S., have bound the minor children herein in the same manner as if such minors had consented to the settlements as adults.

18

5.     Chelsea Martin, as the mother and natural guardian of the minor beneficiary C.S., is competent in all respects and able to understand the ramifications of the Settlement and Release Agreement, the minor's trust, and the structured settlement annuity being purchased for C.S.

6.     The Plaintiff Afarrah Sanders, acting in her capacity as the Administrator of the Estate of Jackie Sanders, and Chelsea Martin, as the mother and natural guardian of the minor beneficiary C.S., have bound the minor child herein in the same manner as if such minor had consented to the settlements as an adult.

7.     Attorney Stephen Agan, acting in his capacity as the Guardian ad Litem for J.S. and M.S., is competent in all respects and is able to understand the ramifications of the Settlement and Release Agreement, as well as the effect such agreement would have upon the minor children, and is competent and able to execute his duties accordingly.

8.     Attorney Brian Davis, acting in his capacity as the Guardian ad Litem for C.S., is competent in all respects and is able to understand the ramifications of the Settlement and Release Agreement, as well as the effect such agreement would have upon the minor child, and is competent and able to execute his duties accordingly.

9.    Having reviewed the details of the proposed disbursement of funds for the minor children, including payment dates and amounts, the Court finds that the extent, nature, and amount of recovery for the minor children are all fair and reasonable, and the disbursement of such funds as provided in the Settlement and Release Agreement and the Disbursement Sheet attached hereto is in the best interests of the minor children.

10.    The attorneys' fees and expenses, Guardian ad Litem fees, and other costs as set forth in the Disbursement Sheet attached hereto are fair and reasonable and in the best interests of the minor children.

11.    The commission requested by the Plaintiff Afarrah Sanders, acting in her capacity as the Administrator of the Estate of Jackie Sanders, is allowed.

12.    The Settlement and Release Agreement should be approved.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Approval of Settlement [Document 29] and the Plaintiff's Petition to Approve Administrator's Commission [Doc. 31] are **GRANTED**, and the parties' Settlement and Release Agreement [Doc. 32] is hereby **APPROVED.**

**IT IS FURTHER ORDERED** that the parties shall file a stipulation of dismissal with respect to all the Plaintiff's claims against the Defendants within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed: January 27, 2023

Martin Reidinger
Chief United States District Judge